Kevin R. Lussier (State Bar No. 143821)
*klussier@veatchfirm.com*
VEATCH CARLSON, LLP
1055 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90017-2444
Tel.: (213) 381-2861; Fax: (213) 383-6370

Barbara A. Solomon (admitted *pro hac vice*)
*bsolomon@fzlz.com*
Sean F. Harb
*sharb@fzlz.com* (admitted *pro hac vice*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900; Fax: (212) 813-5901

*Attorneys for Plaintiff*
MONDELĒZ CANADA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MONDELĒZ CANADA INC.,<br><br>Plaintiff,<br><br>v.<br><br>STONEY PATCH, GREEN KING LA INC, DR VAPE GROUP LLC, VAPE HUB LLC, 4TWENTYHUB, and DOES 1-10,<br><br>Defendants. | **CASE NO.: 2:19-cv-6245**<br>**FIRST AMENDED COMPLAINT FOR:**<br>(1) Trademark Infringement, 15 U.S.C. § 1114(1);<br>(2) Trademark Dilution, 15 U.S.C. § 1125(c);<br>(3) Trade Dress Infringement and Unfair Competition, 15 U.S.C. § 1125(a);<br>(4) Unfair Competition, 15 U.S.C. § 1125(a);<br>(5) Trademark Dilution, Cal. Bus. & Prof. Code §§ 14247<br>(6) Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.* |

1

FIRST AMENDED COMPLAINT

Plaintiff Mondelēz Canada Inc. ("MCI" or "Plaintiff"), for its amended complaint against previously-unidentified Does that have now been identified as defendants Green King LA Inc, Dr Vape Group LLC, and Vape Hub (collectively, the "Packaging Defendants") and defendant 4TwentyHub (the "Dispensary Defendant" and together with the Packaging Defendants and Doe defendants, "Defendants"), by its counsel, alleges as follows.

## Nature of the Action

1.     There has been a growing trend among makers of cannabis products, including edible products infused with tetrahydrocannabinol ("THC"), to market their products by copying and misappropriating the colors, flavors, names and packaging of popular snacks and candies.

2.     States across the nation have recognized the danger posed by cannabis products that are designed to appeal to children or that are packaged to look like popular candy or grocery items, and have enacted statutes restricting how such products may be labeled and packaged.  In California, the Medicinal and Adult-Use Cannabis Regulation and Safety Act ("MAUCRSA") expressly prohibits the use of packaging and labeling designed to be appealing to children or to be easily confused with commercially sold candy or foods that do not contain cannabis (*i.e.* MCI's SOUR PATCH candies).

3.     In complete disregard of California's law, of concerns for public safety, and of MCI's rights, Defendants are intentionally facilitating the sale of THC gummy products using marks and packaging that copy MCI's long-established SOUR PATCH brand of gummy candies.

4.     The Packaging Defendants are selling empty packaging that adopts the confusingly similar brand name STONEY PATCH and that copies the look of the packaging that has long been associated with MCI's SOUR PATCH candies (the

FIRST AMENDED COMPLAINT

1  "Infringing Packaging").  The packaging is sold to unregulated and anonymous third
2  parties who use the bags to sell their own cannabis gummies.

3      5.      The Dispensary Defendant is selling cannabis products in Infringing
4  Packaging to consumers.  It is not known if the Dispensary Defendant's products are
5  sold in Infringing Packaging purchased from the Packaging Defendants or from
6  other third parties.

7      6.      Neither the Packaging Defendants nor the Dispensary Defendant
8  identify the actual source or manufacturer of the gummies being sold and on
9  information and belief there may be numerous unaffiliated manufacturers, many if
10  not all of whom are not licensed,  who sell product in the packaging at issue.

11      7.      The actions of the Defendants are dangerous.  The Defendants'
12  packaging states that the products are in compliance with state law but they are not
13  as they are using packaging designed to attract children and are copying the
14  appearance of food items that are commonly consumed by children.  The Packaging
15  Defendants sell empty packaging that states that the products therein contain 350 mg
16  of THC, yet upon information and belief these Defendants have no way of knowing
17  or controlling what their purchasers actually are placing in the bags, including
18  whether the products are pure or contain dangerous synthetics and what the actual
19  dose is of THC is.  The Dispensary Defendant who continues to sell product in the
20  Infringing Packaging also has no way to determine if the packaging claims are
21  accurate.

22      8.      This danger is not speculative.  In January 2020, following a year-long
23  investigation, prosecutors in Monmouth County New Jersey filed charges against 24
24  individuals (including at least one resident of Los Angeles) for converting legitimate
25  candies into illegal THC-infused product.  The operators of the scheme used regular
26  candy including MCI's SOUR PATCH brand and infused it with a concentrated
27  formula of THC distillate and sold it under the name STONER PATCH.  As noted
28

FIRST AMENDED COMPLAINT

by the prosecutor, because the laced candy is almost indistinguishable from the actual candy and is in packaging that resembles the original packaging, juveniles and others who consume the products are susceptible to random levels of drug toxicity.  The sale of the empty STONEY PATCH packages can lead to the same result.

9.     That juveniles are attracted to the type of packaging being used by the Defendants already has been shown. For example, in September 2019, nine children between the ages of ten and eleven were hospitalized after eating THC-infused gummies in the STONEY PATCH packaging. Such an incident exemplifies the public health danger presented by Defendants' ongoing, willful conduct and the harm that Defendants' conduct is causing to the reputation of MCI.

10.     To stop Defendants' willful infringement of MCI's rights, to prevent the likelihood of consumer confusion or the possibility of mistaken consumption of cannabis gummies by minors caused by Defendants' activities, to prevent harm to the public, and to prevent further dilution and damage to MCI's valuable rights, MCI brings this civil action seeking damages and injunctive relief for willful trademark infringement, dilution, and unfair competition under the laws of the United States, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), dilution under Cal. Bus. & Prof. Code § 14247, and unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq*.  MCI seeks injunctive relief; destruction of infringing goods; monetary relief including recovery of Defendants' profits; and an award of attorney's fees as authorized by Sections 34, 35 and 36 of the Lanham Act, 15 U.S.C. §§ 1116-1118 and/or state law, together with such other relief as the Court deems just and proper.

## The Parties

11.     Plaintiff Mondelēz Canada Inc. is a Canadian corporation with a principal place of business in Ontario, Canada.  MCI is the owner of intellectual

property rights, including trademarks and trade dress, in and to several of the world's most famous snack and candy brands, including SOUR PATCH gummies, as well as their associated trade dress and packaging.

12.     The Complaint was previously filed against Stoney Patch and Does 1-10.  Stoney Patch is a collection of individuals and entities involved in trading off of MCI's SOUR PATCH brand of gummy candies by using the confusingly similar brand name STONEY PATCH and the look of the packaging that has long been associated with MCI's SOUR PATCH candies to advertise and sell products in this District.  Following discovery expressly permitted by the Court, those individuals and entities have now been identified as set forth below.

13.     Upon information and belief, Defendant Green King LA Inc is a California corporation with a principal place of business at 319 Boyd Street, Los Angeles, CA 90013.  Green King LA Inc is selling for its commercial benefit packaging that bears the Stoney Patch name and appropriates and trades off of MCI's SOUR PATCH trademark and trade dress to third parties who use the packaging to sell unregulated cannabis products.

14.     Upon information and belief, Defendant Dr Vape Group LLC is a California limited liability company with a principal place of business at 305 Boyd Street, Los Angeles, California 90013.  Dr Vape Group LLC is selling for its commercial benefit packaging that bears the Stoney Patch name and appropriates and trades off of MCI's SOUR PATCH trademark and trade dress to third parties who use the packaging to sell unregulated cannabis products.

15.     Upon information and belief, Defendant Vape Hub LLC is a California limited liability company with a principal place of business at 212 Boyd Street, Los Angeles, CA 90013.  Vape Hub LLC is selling for its commercial benefit packaging that bears the Stoney Patch name and appropriates and trades off of MCI's SOUR

PATCH trademark and trade dress to third parties who use the packaging to sell unregulated cannabis products.

16.     Upon information and belief, Defendant 4TwentyHub is a delivery only dispensary in Fontana, California that sells unregulated cannabis products in packaging that bears the Stoney Patch name and appropriates and trades off of MCI's SOUR PATCH trademark and trade dress to consumers in San Bernardino, Riverside, and Ontario counties in California.  Defendant does not publicize an address but relies primarily on phone contact at the number 888-552-1283 and its website at https://4twentyhub.com/.

17.     Upon information and belief, defendants Does 1-10 are the owners, operators, managers and officers of businesses, each of which is systematically conducting and transacting business in this District and is engaged in the activities complained of herein.  More specifically, Does 1-10 are responsible for using the Stoney Patch name and for appropriating and trading off of MCI's SOUR PATCH trademark and trade dress for their commercial benefit.  Defendants are engaged in the misappropriation of MCI's intellectual property rights through advertising and sale of products in and through this District.  Upon learning of the specific identify of the individuals, Plaintiff will move to substitute the named parties to or otherwise amend this Amended Complaint.

## Jurisdiction and Venue

18.     This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b).  Supplemental jurisdiction exists over Plaintiff's state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

19.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants' Green King LA Inc, Dr Vape Group LLC, Vape Hub LLC, and 4TwentyHub have principal places of business in California and all

FIRST AMENDED COMPLAINT

1    Defendants conduct business in this District including by shipping or selling their

2    products into this District.  As such, jurisdiction over these Defendants comports

3    with and is not incompatible with the Constitution of this State or of the United

4    States.  California Code of Civil Procedure § 410.10.

5         20.     Venue is proper under Section 1391(b) of the Judicial Code, 28 U.S.C.

6    § 1391(b), because a substantial part of the events giving rise to the claims occurred

7    in and are directed to this District.  Specifically, upon information and belief,

8    Defendants' Green King LA Inc, Dr Vape Group LLC, Vape Hub LLC, and

9    4TwentyHub principal places of business are in California and in this District;

10    Defendants do business in this District; Defendants' confusion of consumers and

11    dilution of MCI's trademark rights occur in California and in this District; the harm

12    to MCI's trademark rights and goodwill takes place in this District; and MCI's

13    trademark rights arise from, among other things, its business in this District.

### Facts Common to All Claims

14

15      **A.     Plaintiff and its Iconic SOUR PATCH Brand**

16         21.     MCI is a part of the Mondelēz International group of companies, which

17    manufactures and sells some of the most iconic snacks and candies in the U.S.,

18    including SOUR PATCH gummies.

19         22.     MCI, through its predecessors, affiliates, and licensees, has been selling

20    SOUR PATCH brand gummies throughout the United States since at least as early

21    as 1985.  MCI's SOUR PATCH gummies are one of the bestselling brands of non-

22    chocolate soft and chewy candy in the United States.  To illustrate the popularity of

23    SOUR PATCH gummies, Plaintiff, through its affiliates and licensees, sells tens of

24    millions of packages of SOUR PATCH branded gummies in the United States each

25    year.  The SOUR PATCH brand is a famous brand and associated exclusively with

26    MCI.

27

28

FIRST AMENDED COMPLAINT

23.    Just as famous and well-known as the SOUR PATCH trademark is MCI's packaging for its SOUR PATCH gummies.  For decades MCI has packaged its SOUR PATCH KIDS candies in a distinct bag that has a yellow center with green dabs at the edges that allow the yellow to peak through.  In the center, are the words SOUR, PATCH, and KIDS stacked one atop the other in the colors green, orange, and red, respectively.  In the top left is the slogan "Sour then Sweet."  The packaging further shows the appearance of the actual gummy kids around the outside of the packaging (the "Sour Patch Kid Design").  Examples of the SOUR PATCH KIDS trade dress are shown below.

  

24.    As evidenced by the above, MCI's trade dress for its packaging maintains a consistent yellow and green color palette; a consistent presentation of the SOUR PATCH mark with SOUR in green lettering stacked atop PATCH in yellow lettering and the entire word mark outlined in black, all placed in the center of the package; representations of the Sour Patch Kid Design placed around the center word mark; and the phrase "Sour Then Sweet" with the words appearing in the different colors.

25.    Since at least as early as 2012, MCI has used the package design for its SOUR PATCH gummies, shown below.  The package retains each of the aforementioned elements of the famous SOUR PATCH KIDS trade dress and

FIRST AMENDED COMPLAINT

includes the additional element of black silhouettes of the Sour Patch Kid Design in the center of the packaging (collectively the "SOUR PATCH Trade Dress").



26.     Over the period from 2015 to 2018 alone, MCI, through its affiliates and licensees, has sold over 630 million packets of SOUR PATCH brand gummies in the SOUR PATCH Trade Dress and bearing the specific Sour Patch Kid Design (collectively the "SOUR PATCH Marks").

27.     MCI's SOUR PATCH products featuring or sold under the SOUR PATCH Marks are available in more than 10,000 stores in the United States ranging from mom-and-pop stores to convenience stores, candy stores, grocery chains including Kroger, Ralphs, and Vons, and mass-market chains, including Walmart, Target, and Costco.  As a result, each of the SOUR PATCH Mark, the Sour Patch Kid Design, and the SOUR PATCH Trade Dress have extremely broad brand exposure and a very broad purchaser base.

28.     MCI or its related and affiliated entities extensively advertise SOUR PATCH products.  The advertising consistently uses all of the the SOUR PATCH Marks.  Advertising appears in a variety of channels, including television (during such popular programs as "The View," "The Bachelorette," and "American Idol"), online (including at https://www.sourpatch.com/), social media sites, and couponing and freestanding inserts in print publications.  It is estimated that by the end of 2019,

there will have been in excess of three billion media, commercial and online impressions featuring the SOUR PATCH Marks.  MCI and its related and affiliated entities have spent in excess of $70 million in advertising and promoting SOUR PATCH branded product using the SOUR PATCH name, kid design and trade dress shown above.  Advertising by MCI and advertising by MCI's retail partners featuring the SOUR PATCH Marks have reached hundreds of millions of consumers.

29.    The SOUR PATCH Trade Dress is inherently distinctive.  Further, due to the extensive promotion of MCI's products and the broad distribution, enormous volume of sales and advertising of the product, SOUR PATCH Marks have become well known among consumers and are associated uniquely and exclusively with MCI.

30.    The combination of elements that make up the SOUR PATCH Trade Dress is not functional for purposes of Section 43(a)(3) of the Lanham Act, 15 U.S.C. § 1125(a)(3), as none of the elements making up the SOUR PATCH Trade Dress are essential to the use or purpose of the underlying products or packaging, none affect the cost or quality of the product or packaging and, when used exclusively by MCI, do not put any third parties at a significant non-reputation-related disadvantage.

31.    In addition to Plaintiff's strong common law rights in the SOUR PATCH mark, Sour Patch Kid Design, and SOUR PATCH Trade Dress, Plaintiff also owns numerous federal trademark registrations for these designations, including the following:

| Mark | Goods/Services | Registration Date |
|---|---|---|
| SOUR PATCH<br>Reg. No. 2304261 | "Candy" in International Class 30 | 12/28/1999 |

FIRST AMENDED COMPLAINT

| SOUR PATCH KIDS<br>Reg. No. 4207065 | "Frozen confections" in International Class 30 | 9/11/2012 |
|---|---|---|
| SOUR PATCH KIDS<br>Reg. No. 4600837 | "Chewing gum" in International Class 30 | 9/9/2014 |
| SOUR PATCH EXTREME<br>Reg. No. 3160364 | "Confectionary, namely candy" in International Class 30 | 10/17/2006 |
| SOUR PATCH XPLODERZ<br>Reg. No. 3314527 | "Confectionary, namely candy" in International Class 30 | 10/16/2007 |
| <br>Reg. No. 2812019 | "Candy" in International Class 30 | 2/10/2004 |
| <br>Reg. No. 5514097 | "Candy" in International Class 30 | 7/10/2018 |
| Reg. No. 4305345<br> | "Candy; frozen confections" in International Class 30 | 3/19/2013 |

(the "SOUR PATCH Registrations").

FIRST AMENDED COMPLAINT

32.     Printouts from the official database of the United States Patent and Trademark Office showing status and title of the SOUR PATCH Registrations are attached as **Exhibit A**.

33.     The existence of these valid and subsisting federal trademark registrations constitutes prima facie evidence of the ownership and validity of MCI's registered SOUR PATCH marks.

34.     Moreover, Registration Nos. 2304261, 4207065, 3160364, 3314527, 2812019, and 4305345 are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of MIC's exclusive right to use those marks for the products specified in the registrations pursuant to 15 U.S.C. §§ 1065 and 1115(b).

35.     The SOUR PATCH Marks are vital assets of MCI, representing not only MCI's goods, but also MCI's worldwide reputation as a purveyor of high quality, family friendly snacks and candies.  These marks are the embodiment of MCI's iconic brands, known throughout the United States and beloved by consumers.

**B.      Defendants' Infringing Activity**

36.     Upon information and belief, the Packaging Defendants market and sell empty packaging for THC-infused gummy candies and the Dispensary Defendant markets and sells THC-infused gummy candies to individuals throughout California and the United States.

37.     The Packaging Defendants are selling packaging that appropriates MCI's registered SOUR PATCH trademark and Sour Patch Kid Design, and that copies the signature elements of MCI's SOUR PATCH packaging, including the packaging shown below (the "Infringing Trade Dress").

FIRST AMENDED COMPLAINT

Infringing Trade Dress





FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14

 

MCI's Trade Dress

15
16
17
18
19
20
21
22
23
24
25
26
27
28



14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38.    The Dispensary Defendant is carrying, selling, and/or advertising THC gummies in the Infringing Trade Dress, as shown here:

<u>4TwentyHub</u>



## Stoney Patch Gummies | 350mg

**$15.00**



Category: **THC Edibles**
Tags: **Candy**, **Edibles**, **Gummy**, **Snacks**

39.    The Infringing Trade Dress copies the distinctive elements of the SOUR PATCH Trade Dress, including: a yellow center with green around the edges that allow the yellow to peak through; the placement of a nearly identical brand name in the center of the packaging with each word stacked one atop the other and with the first word in the color green and the bottom word in orange; a slogan located near the brand name that describes the candy as sour and sweet with the words in the identical colors white, yellow, and red and used in the same order as MCI's slogan on its packaging; images of a gummy that is virtually identical to MCI's Sour Patch Kid Design (the "Stoney Kid Design") that are placed around the center word mark; and black silhouetted designs in the center of the packaging surrounding the word mark.

40.    The STONEY PATCH mark used by Defendants to sell their products is virtually identical in sight, sound and commercial impression to MCI's long-used and federally-registered SOUR PATCH trademark.

FIRST AMENDED COMPLAINT

41.     The Stoney Kid Design used on the Defendants' packaging is virtually identical in sight and commercial impression to MCI's long-used and federally-registered Sour Patch Kid Design mark.

42.     Given the fame and recognition of the SOUR PATCH Marks, it is inconceivable that Defendants were not aware of the STONEY PATCH mark, Stoney Kid Design mark, and MCI's packaging before they began their own use of the Infringing Packaging and Infringing Trade Dress.  Further, the similarity between the marks and packaging used by Defendants and MCI's marks and packaging cannot be mere coincidence but evidences a deliberate attempt to trade on MCI's rights.

43.     Even if Defendants could establish a lack of actual notice, a fact belied by the overwhelming similarities in the marks and packaging, by virtue of MCI's registrations for the SOUR PATCH mark, including in the design form used on packaging, and its registrations for the Sour Patch Kid Design, as a matter of law prior to the adoption of the STONEY PATCH name, Stoney Kid Design, and packaging, Defendants were presumed to have been on actual notice of MCI's rights pursuant to 15 U.S.C. § 1072.

44.     Defendants continue to use the STONEY PATCH mark, Stoney Kid Design, and Infringing Trade Dress in connection with their products demonstrating their ongoing intent to maintain an association with MCI's SOUR PATCH brand.

45.     Upon information and belief, Defendants intentionally chose to infringe MCI's SOUR PATCH mark, Sour Patch Kid Design, and SOUR PATCH Trade Dress and are intentionally seeking to call to mind MCI's SOUR PATCH brand of gummies and to trade on the recognition and good will of MCI's mark and brand.

46.     Defendants have never been associated with MCI and have never been authorized to use or to trade on MCI's marks or trade dress.

FIRST AMENDED COMPLAINT

47.     Defendants' actions are inconsistent with MCI's rights and put at risk the goodwill that MCI has built up in its SOUR PATCH Marks.

48.     MCI has sent multiple letters to the Dispensary Defendant, and copied the Manufactured Cannabis Safety Branch of the California Department of Health on each of these letters, regarding the sale of products under the STONEY PATCH mark and in the Infringing Packaging, but to date, as far as MCI is aware, the California Department of Health has taken no action against the Dispensary Defendant nor has the Dispensary Defendant complied with MCI's demands to cease selling the products in the Infringing Trade Dress and to identify the source of the goods being sold.

49.     MCI also sent multiple letters directly to the Chief of the Bureau of Cannabis Control, and copied the Attorney General of California, asserting that the Bureau's lack of enforcement against dispensaries selling illegal products is contributing to a growing public health concern and asking that the Bureau Chief advise as to what actions the Bureau will be taking to address the issue.  No responses were received from the Bureau or the Attorney General's office.

50.     Defendants' continued appropriation of the SOUR PATCH Marks has compelled Plaintiff to initiate this action in order to protect MCI's valuable rights.

51.     Defendants' use of the Infringing Trade Dress is inconsistent with MCI's rights and is causing and will continue to cause irreparable harm to MCI by associating MCI's marks and trade dress with illegal products sold by unregulated manufacturers and otherwise with products that MCI would not sell, would not market, and would not condone.

52.     Defendants' unauthorized acts as described herein put MCI's reputation at risk, are inconsistent with MCI's federal trademark registrations and common law rights in the SOUR PATCH Marks, will cause and will continue to cause irreparable

damage to MCI's business and goodwill unless permanently enjoined by this Court. MCI has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF:

### Federal Trademark Infringement of the SOUR PATCH Mark

### (15 U.S.C. § 1114(1))

53.    Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54.    The STONEY PATCH mark used by Defendants is virtually identical in sight, sound and commercial impression to MCI's long-used and federally-registered SOUR PATCH trademark.

55.    Defendants' use of STONEY PATCH on or in connection with the sale of THC gummies or the packaging for such goods in light of MCI's prior rights in and to the federally registered mark SOUR PATCH, is likely to deceive consumers and the public as to the source or sponsorship of Defendants' products and is likely to mislead consumers into believing that Defendants' products are manufactured, licensed, sponsored or otherwise approved by Plaintiff or that they feature flavors licensed from Plaintiff, or that they are in fact MCI's products.

56.    Defendants' continued use of the STONEY PATCH mark is in bad faith, and with full knowledge of Plaintiff's prior use of, exclusive rights in and ownership of the registered SOUR PATCH mark, and with full knowledge of the goodwill and reputation associated with the SOUR PATCH mark.

57.    Defendants' ongoing conduct is intended to reap the benefit of the goodwill that Plaintiff has created in its SOUR PATCH mark and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff and to harm and

deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:

## Federal Trademark Infringement of the Sour Patch Kid Design Mark
## (15 U.S.C. § 1114(1))

59.     Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

60.     The Stoney Kid Design mark used by Defendants is virtually identical in sight and commercial impression to MCI's long-used and federally-registered Sour Patch Kid Design trademark.

61.     Defendants' use of the Stoney Kid Design on or in connection with the sale of THC gummies or the packaging for such goods in light of MCI's prior rights in and to the federally registered Sour Patch Kid Design trademark, is likely to deceive consumers and the public as to the source or sponsorship of Defendants' products and is likely to mislead consumers into believing that Defendants' products are manufactured, licensed, sponsored or otherwise approved by Plaintiff or that they feature flavors licensed from Plaintiff, or that they are in fact MCI's products.

62.     Defendants' continued use of the Stoney Kid Design mark is in bad faith, and with full knowledge of Plaintiff's prior use of, exclusive rights in and ownership of the registered Sour Patch Kid Design mark, and with full knowledge of the goodwill and reputation associated with the Sour Patch Kid Design mark.

63.     Defendants' ongoing conduct is intended to reap the benefit of the goodwill that Plaintiff has created in its Sour Patch Kid Design mark and constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

64.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff and to harm and

deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

### Federal Trademark Dilution of Plaintiff's SOUR PATCH Mark
### (15 U.S.C. § 1125(c))

65.    Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

66.    As a result of MCI's extensive use and promotion of the SOUR PATCH mark, the offering of goods under that mark nationwide, the sale of millions of packets of SOUR PATCH branded goods, and the uninterrupted use of the SOUR PATCH mark for decades, the SOUR PATCH mark is famous throughout the United States, highly distinctive of Plaintiff's goods, and widely recognized among the consuming public as a designation of source of Plaintiff's goods.

67.    The SOUR PATCH Mark became famous long before Defendants commenced their unauthorized use of the STONEY PATCH mark as described herein.

68.    The STONEY PATCH mark used by Defendants is substantially similar to MCI's federally-registered SOUR PATCH trademark and otherwise calls to mind MCI's SOUR PATCH trademark.

69.    Defendants' commercial use of the STONEY PATCH mark on their products is likely to dilute Plaintiff's famous SOUR PATCH mark by impairing its distinctiveness, thereby lessening the capacity of the SOUR PATCH mark to identify and distinguish Plaintiff exclusively in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70.    Moreover, Defendants' use of STONEY PATCH, which immediately calls to mind Plaintiff's SOUR PATCH mark, also tarnishes Plaintiff's SOUR PATCH mark by associating Plaintiff's SOUR PATCH brand with a federally

controlled substance and with products that are being sold in an unregulated manner and not in compliance with the laws applicable to the sale of cannabis products in the State of California.

71.    Upon information and belief, Defendants do not own any federal or state trademark registrations for any mark that includes, in whole or in part, SOUR PATCH or STONEY PATCH and cannot assert any rights in the SOUR PATCH or STONEY PATCH mark that is prior to Plaintiff's.

72.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### Federal Trade Dress Infringement and Unfair Competition
### (15 U.S.C. § 1125(a))

73.    Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

74.    The SOUR PATCH Trade Dress is used in commerce, is not functional, is inherently distinctive and has acquired secondary meaning in the marketplace.

75.    The Infringing Trade Dress used by Defendants for their products is highly similar to the SOUR PATCH Trade Dress in appearance and commercial impression.

76.    Upon information and belief, Defendants adopted and otherwise are using  the Infringing Trade Dress in commerce  with actual knowledge of MCI's prior use of and rights in the well-known and distinctive SOUR PATCH Trade Dress.  Upon information and belief, Defendants have used their Infringing Trade Dress in commerce with the intent to cause confusion, to cause mistake or to

deceive, or to otherwise create an association with MCI and to trade on the goodwill and reputation of MCI.

77.    Defendants' use in commerce of the Infringing Trade Dress is likely to cause confusion, to cause mistake or deception as to the source of their products and is likely to create the false impression that Defendants' products are authorized, sponsored, endorsed, licensed by or affiliated with MCI or otherwise feature flavorings licensed from MCI or to lead consumers notably children to mistakenly believe that Defendants' product are in fact MCI's candy.

78.    Defendants' ongoing conduct is intended to reap the benefit of the goodwill that Plaintiff has created in the SOUR PATCH Trade Dress and constitutes willful trade dress infringement and use of a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79.    Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff and to harm and deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF:**

**Unfair Competition in Violation of 15 U.S.C. § 1125(a)**

80.    Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

81.    The packaging used by Defendants trades on the SOUR PATCH Marks which uniquely and unmistakably point to Plaintiff.

82.    As a result of Defendants' use of the STONEY PATCH mark and the Infringing Trade Dress, consumers are likely to falsely believe that Defendants' products are sponsored by, associated with, authorized by, endorsed by, or otherwise connected with Plaintiff, when they are not.

83.     Defendants' conduct usurps MCI's rights and reputation and places Plaintiff's reputation in Defendants' hands.  The harm to Plaintiff's reputation is exceptionally serious because the Defendants are using the STONEY PATCH mark to sell a federally controlled substance or packaging intended to be used to sell a federally controlled substance.  Further, the packaging is being used to sell unregulated product whose source is not identified and the packaging bearing the Infringing Trade Dress and that otherwise misuses the SOUR PATCH Marks violates California state law concerning packaging for cannabis products. As such, Defendants' conduct constitutes unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

84.     Upon information and belief, Defendants' acts of unfair competition are willful and deliberate with the intent to misappropriate the goodwill and reputation associated with MCI's SOUR PATCH Marks.  Defendants' activities in commercially exploiting the SOUR PATCH Marks threatens to destroy the value, exclusivity and reputation of MCI's marks.

85.     Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and to harm and deceive the public and will continue to damage Plaintiff unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

## Dilution of Plaintiff's SOUR PATCH Mark under California Law
## (Cal. Bus. & Prof. Code § 14247)

86.     Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

87.     As a result of Plaintiff's extensive use and promotion of the SOUR PATCH mark for decades, the SOUR PATCH mark has become famous in the State

1  of California, is distinctive of Plaintiff, and is widely recognized among consumers

2  as designations of source of Plaintiff's candies.

3      88.    The STONEY PATCH mark used by Defendants is substantially

4  similar to MCI's SOUR PATCH mark and otherwise calls to mind MCI's SOUR

5  PATCH mark.

6      89.    Defendants' commercial use of the STONEY PATCH mark in

7  connection with its products is diluting and is likely to continue to dilute Plaintiff's

8  famous SOUR PATCH mark by impairing its distinctiveness, thereby lessening the

9  capacity of the mark to identify and distinguish Plaintiff exclusively in violation of

10  Cal. Bus. & Prof. Code § 14247.

11      90.    Moreover, Defendants' conduct dilutes Plaintiff's SOUR PATCH mark

12  by tarnishment because it associates Plaintiff's SOUR PATCH brand with a

13  federally controlled substance and with products that are being sold in an

14  unregulated manner and not in compliance with the laws applicable to the sale of

15  cannabis products in the State of California.

16      91.    Defendants' conduct has caused and is causing immediate and

17  irreparable injury to Plaintiff and will continue to damage Plaintiff unless enjoined

18  by this Court.  Plaintiff has no adequate remedy at law.

19              **SEVENTH CLAIM FOR RELIEF:**

20  **Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 _et seq_.**

21      92.    Plaintiff repeats and realleges paragraphs 1 through 50 as if fully set

22  forth herein.

23      93.    The aforesaid conduct of Defendants—trademark infringement,

24  trademark dilution, and unfair competition—constitutes unfair competition in

25  violation of Cal. Bus. & Prof. Code §§ 17200 _et seq_.

26

27

28

FIRST AMENDED COMPLAINT

1   94.    Defendants' aforesaid conduct has caused, and unless enjoined by this

2 Court, will continue to cause, Plaintiff to sustain irreparable damage, loss and injury,

3 for which Plaintiff has no adequate remedy at law.

4                            **PRAYER FOR RELIEF**

5   **WHEREFORE**, Plaintiff respectfully demands judgment as follows:

6   1)    That judgment be entered for Plaintiff on each of its claims.

7   2)    That a permanent injunction be issued enjoining Defendants and their

8 officers, agents, privies, principals, directors, shareholders, managing agents,

9 owners, licensees, distributors, servants, attorneys, employees, and any companies

10 owned or controlled by any of the Defendants now or in the future, and each of their

11 affiliates, successors and assigns, and all of those in active concert or participation

12 with Defendants who receive notice directly or otherwise, be permanently enjoined

13 and restrained from:

14   a.    using MCI's SOUR PATCH mark, Sour Patch Kid Design, the

15 SOUR PATCH Trade Dress, any marks or any trade dress confusingly similar

16 thereto, the STONEY PATCH mark, Stoney Kid Design, the Infringing Trade

17 Dress, or any other trade dress confusingly similar thereto (collectively, the

18 "Prohibited Marks") in connection with importing, manufacturing, producing,

19 circulating, advertising, distributing, licensing, offering for sale, selling,

20 promoting, or displaying any goods or in connection with the packaging for

21 any goods, including but not limited to THC gummies;

22   b.    conducting any activities in the United States that constitute,

23 relate to, refer to or concern the advertising, promotion, manufacture,

24 production, importation, distribution, display, sale or offering for sale of any

25 product or product packaging in any media or format using any Prohibited

26 Marks;

27

28

FIRST AMENDED COMPLAINT

c.      imitating, copying or making unauthorized use of the SOUR PATCH Marks, including without limitation on any website, social media pages, catalogs or invoices;

d.      using in any manner in their business or in connection with any products, directly or indirectly, any Prohibited Marks;

e.      transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing any of the Prohibited Marks;

f.      owning, renting, purchasing or otherwise obtaining rights to any internet search term, keyword or social media handle that includes in whole or in part any Prohibited Marks for purposes of promoting Defendants' products;

g.      using or registering any of the Prohibited Marks as part of any domain name, uniform resource locator, internet address, or social media account name or handle;

h.      applying to register, filing, maintaining or retaining any registration or application to register in the United States Patent and Trademark Office or the trademark office of any State any Prohibited Marks;

i.      using any false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' goods are in any way sponsored, licensed, endorsed, or authorized by, or affiliated, associated or connected with, Plaintiff, or originate from Plaintiff;

j.      doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers or others in the ingestible products industry into the belief that the goods provided by Defendants emanate from or originate with Plaintiff, or are somehow

1    sponsored, licensed, endorsed, or authorized by, or affiliated, associated or

2    connected with Plaintiff;

3        k.    disposing, destroying, altering, moving, removing, concealing,

4    tampering with or in any manner secreting any business records (including

5    computer records) of any kind, including invoices, correspondence,

6    automotive products of account, receipts or other documentation relating or

7    referring in any manner to the manufacture, advertising, receiving,

8    acquisition, importation, purchase, sale or offer for sale, or distribution of any

9    merchandise offered, distributed or sold under any of the Prohibited Marks;

10       l.    engaging in any other activity constituting unfair competition

11   with Plaintiff or constituting an infringement of Plaintiff's SOUR PATCH

12   Marks or packaging or otherwise damaging Plaintiff's goodwill in the SOUR

13   PATCH Marks; and

14       m.    assisting, aiding, or abetting any other person or business entity

15   in engaging in or performing any of the activities referred to in the above

16   subparagraphs (a) through (l), or effecting any assignments or transfers,

17   forming new entities or associations or utilizing any other device for the

18   purpose of circumventing or otherwise avoiding the prohibitions set forth in

19   subparagraphs (a) through (l).

20       3)    Directing that Defendants deliver up to Plaintiff for destruction or other

21   disposition, without any compensation to Defendants, all goods, labels, tags, signs,

22   stationery, prints, packages, promotional and marketing materials, advertisements

23   and other materials currently in its possession or under its control incorporating,

24   featuring or bearing any Prohibited Marks.

25       4)    Directing such other relief as the Court may deem appropriate to

26   prevent the relevant public and the industry from deriving the erroneous impression

27   that any goods offered for sale or sold by Defendants are authorized by Plaintiff or

28

FIRST AMENDED COMPLAINT

1 | related in any way to Plaintiff and/or Plaintiff's goods, or that Defendants are
2 | otherwise affiliated with Plaintiff.

3 |     5)    Directing Defendants to each file with the Court and serve on counsel
4 | for Plaintiff within thirty (30) days after entry of judgment, a sworn written
5 | statement setting forth in detail the manner and form in which each Defendant has
6 | complied with paragraphs 2 through 4 above.

7 |     6)    Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff all of Defendants'
8 | profits from their acts of infringement and unfair competition and their willful acts
9 | of dilution, which amounts shall be trebled based on the infringement of the SOUR
10 | PATCH mark in accordance with 15 U.S.C. § 1117(b).

11 |     7)    Pursuant to 15 U.S.C. § 1117(a), awarding Plaintiff its actual damages
12 | sustained as a result of Defendants' violations of the Lanham Act, which amount
13 | shall be trebled based on the infringement of the SOUR PATCH mark in accordance
14 | with 15 U.S.C. § 1117(b).

15 |     8)    Awarding Plaintiff the costs of this action including reasonable
16 | attorneys' fees pursuant 15 U.S.C. § 1117(a) and/or applicable state law.

17 |     9)    Awarding Plaintiff interest, including pre-judgment interest, on the
18 | foregoing sums.

19 |     10)    Awarding Plaintiff such other and further relief as the Court deems just
20 | and proper.

21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

FIRST AMENDED COMPLAINT

1

Dated:  January 21, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By:  *Kevin R. Lussier*
Kevin R. Lussier (State Bar No. 143821)
VEATCH CARLSON, LLP
1055 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90017-2444
Tel.: (213) 381-2861; Fax: (213) 383-6370)

-and-

Barbara A. Solomon (*pro hac vice* to be filed)
Sean F. Harb (*pro hac vice* application to be filed)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900; Fax: (212) 813-5901

*Attorneys for Plaintiff*
MONDELEZ CANADA INC.

FIRST AMENDED COMPLAINT